**VAN SYOC CHARTERED**
**535 ROUTE 38 EAST, SUITE 501**
**CHERRY HILL, NJ 08002**
**(856) 910-8282**
**ATTORNEYS FOR PLAINTIFFS**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIANNA H. VAN LAARHOVEN AND MARIANNA SPITZ, as individuals, as representatives of the General Estate of the decedent JOHN GEORGE SPITZ, and as administrators ad prosequendum for the said Estate,    :    :    :    :    :    :    : | Civil Action No.: 03-CV-2437 (JBS) |

Plaintiffs,

     v.

ROBERT A. KOSSEFF, ESQUIRE,
ROBERT A. KOSSEFF & ASSOCIATES,
P.C., a professional corporation, KOSSEFF
& CHAIKEN, a partnership, JOSEPH
CHAIKEN, ESQUIRE,
BRENDAN G. MEEHAN, AND NESS
MOTLEY, LOADHOLT, RICHARDSON
& POOLE, JOHN DOES 1 THROUGH
50, inclusive, fictitious named defendants,
jointly, severally, and in the alternative,

        Defendants

### PLAINTIFFS' BRIEF IN OPPOSITION TO THE DEFENDANT
### ROBERT A. KOSSEFF & ASSOCIATES, P.C.'S MOTION
### FOR SUMMARY JUDGMENT

On the Brief:

     James E. Burden, Esquire (8604)

## TABLE OF CONTENTS

Table of Authorities                                                           ii

PROCEDURAL HISTORY                                                            1

PLAINTIFFS' RESPONSE TO THE KOSSEFF DEFENDANTS'
STATEMENT OF MATERIAL FACTS                                                   3

PLAINTIFFS' COUNTERSTATEMENT OF UNDISPUTED
MATERIAL FACTS                                                                5

LEGAL ARGUMENT

    I.    THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
        SHOULD BE DENIED AS THEY WHOLLY FAIL TO COMPLY
        WITH THE RULES OF THIS COURT                                 10

    II.   THE NEW JERSEY STATUTE OF LIMITATIONS, A
        PROCEDURAL RULE OF LAW, APPLIES TO THIS CASE,
        AND THE PLAINTIFFS FILED WITHIN THE SIX YEAR
        STATUTE                                                       11

    III.  AS A MATTER OF LAW, PLAINTIFFS HAVE COMPLIED
        WITH THE NEW JERSEY STATUTE OF LIMITATIONS;
        THUS THE COURT SHOULD STRIKE THE DEFENSE OF
        FAILURE TO COMPLY WITH THE STATUTE OF
        LIMITATIONS                                                   16

    IV.  THE KOSSEFF DEFENDANTS ARE ESTOPPED FROM
        ASSERTING THE STATUTE OF LIMITATIONS AS A
        DEFENSE IN THIS MATTER UNDER NEW JERSEY LAW                   17

    V.   THE KOSSEFF DEFENDANTS' MOTIONS SHOULD BE
        DENIED AS DISCOVERY IS INCOMPLETE                            24

CONCLUSION                                                                   25

# TABLE OF AUTHORITIES

## CASES

Aikens v. Schmidt,
    329 N.J. Super. 335 (App. Div. 2000)                    23

Big Apple BMW, Inc. v. BMW of N.Am., Inc.,
    974 F.2d 1358 (3d. Cir. 1992), cert. denied,
    507 U.S. 912, 113 S. Ct. 1262, 122 L.Ed. 2d 659 (1993)      10

Bowers v. NCAA,
    9 F.Supp. 2d 460, 476 (D.N.J. 1998)               11

Brown v. Brown,
    208 N.J. Super. 372 (App. Div. 1986)             23

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)                       10

Commonwealth Title v. Kurnos,
    340 N.J. Super. 25 (App. Div. 2001)              17

Du-Wel Prods., Inc. v. United States Fire Ins. Co.,
    236 N.J. Super. 349 (App. Div. 1989) *certif. den.*, 121 N.J. 617 (1990)  12

Erie R.R. Co. v. Tompkins,
    304 U.S. 64 (1938)                        11

Gantes v. Kason Corp.,
    145 N.J. 478 (1996)                      15

Grossman v. Club Med, Inc.,
    273 N.J. Super. 42 (App. Div. 1994)              16

Grunwald v. Bronkesh,
    131 N.J. 483 (1993)                  12, 16, 17

Guaranty Trust Co. v. York,
    326 U.S. 99 (1945)                        12

Hancock Indrs. v. Schaeffer,
    811 F.2d 225 (3d Cir. 1987)                  10

Heavner v. Uniroyal Inc,
    63 N.J. 130 (1973)                                                  12, 13, 14, 15, 16

Hernandez v. Stella,
    359 N.J. Super. 415 (App. Div. 2003)                     23

Kachmar v. Sungard Data Systems, Inc.,
    109 F.3d 173, 182-183 (3rd Cir. 1997)                   25

Klaxon Co. v. Stentor Elec. Mfg. Co.,
    313 U.S. 487 (1941)                                       12

Knapp v. Murphy,
    30 Pa. D. & C. 4th (Tioga Co. C.C.P. 1996)            16

Knorr v. Smeal,
    175 N.J. 431 (2003)                                       18

Knorr v. Smeal,
    178 N.J. 169 (2003)                             17, 18, 19, 20, 21, 22, 23, 24

Konopka v. Foster,
    356 N.J. Super. 223, 812 A.2d 363 (App. Div. 2002)     23, 24

Levinson v. DAlfonso,
    320 N.J. Super. 312 (App. Div. 1999)                     16

Marshall v. Geo. M. Brewster & Son, Inc.,
    37 N.J. 176 (1962)                                   12, 13, 14, 15, 16

McGrogan v. Till,
    327 N.J. Super. 595 (App. Div. 2000)                     17

Morris v. Krauszers Food Stores,
    300 N.J. Super. 529 (App. Div. 1997)                     23

Muller Fuel Oil Company v. Insurance Company of North America,
    95 N.J. Super. 564, 232 A.2d 168 (App. Div. 1967)      22

Murphy v. Housing Authority, Atlantic City,
    32 F.Supp.2d 753, 763 (D.N.J. 1999)                     10

Mystic Isle Dev. Corp. v. Perskie & Nehmad,
    142 N.J. 310 (1994)               17

Nappe v. Anschelewitz, Barr, Ansell & Bonello,
    97 N.J. 37, 477 A.2d 1224 (1984)               23

National-Standard Company v. Clifton Avenue Corp.,
    775 F. Supp. 151 (D.N.J. 1991)               12

N.J. Auto Ins. Plan v. Sciarra,
    103 F.Supp. 2d 388, 395 (D.N.J. 1998)           11

North Bergen Rex Trans. v. TLC,
    158 N.J. 561 (1999)               12

OKeeffe v. Snyder,
    83 N.J. 478 (1980)               12, 13, 14, 16

Olds v. Donnelly,
    150 N.J. 424 (1997)               17

Pastore v. Bell Telephone Co. of Pennsylvania,
    24 F.3d 508, 512 (3d Cir. 1994)             10

Pennsylvania Coal Ass'n v. Babbitt,
    63 F.3d 231, 236 (3d Cir. 1995)             10

Reitz v. County of Bucks,
    125 F.3d 139, 143 (3rd Cir 1997)            10

Safer v. Willoughby,
    143 N.J. 256 (1996)               22

Salomon v. Eli Lilly and Co.,
    98 N.J. 58 (1984)               25

Saltsman v. Corazo,
    317 N.J. Super. 237, 721 A.2d 1000 (App. Div. 1998)    22

Schum v. Bailey,
    578 F.2d 493 (3rd Cir. 1978)             12

SEC v. Chester Holdings, Ltd.,
    41 F.Supp. 2d 505, 516 (D.N.J. 1999)           11

Stoelting v. Hauck,
    32 N.J. 87, 59 A.2d 385 (1960)           22

Veasey v. Doremus,
    103 N.J. 244 (1986)           16

Velantzas v. Colgate-Palmolive Co.,
    109 N.J. 189 (1988)           25

White v. Karlsson,
    354 N.J. Super. 284 (App. Div. 2002)           24

Zaccardi v. Becker,
    88 N.J. 245, 440 A.2d 1329 (1982)           24

## PROCEDURAL HISTORY

Plaintiffs' complaint was initially filed in the Superior Court of the State of New Jersey, Law Division, Camden County on April 10, 2003 under Docket No. L-2128-03. See, true copy of plaintiffs' complaint appended to plaintiff's counsel's Affidavit as Exhibit "1". The complaint seeks relief from the following defendants: Robert A. Kosseff, Esquire, Robert A. Kosseff & Associates, P.C. ("the Kosseff defendants"), Kosseff & Chaiken, Joseph Chaiken, Esquire, Brendan G. Meehan, and Ness, Motley, Loadholt, Richardson & Poole.

The complaint contains four counts, and seeks relief under the following legal theories: (1) breach of contract; (2) negligence and legal malpractice; (3) fraud; and (4) willful, wanton, malicious breach of fiduciary duty and fraud, misrepresentation and deceit.

The defendants were served, and on or about May 23, 2003, the Ness Motley defendants filed a Notice of Removal to this Court, predicated on diversity jurisdiction, given the fact that Ness Motley maintains offices for the transaction of business in Mt. Pleasant, South Carolina. See, true copy of Notice of Removal (without attachments) appended to plaintiffs' counsel's Affidavit as Exhibit "2".

Prior to the filing of the Notice of Removal, the Kosseff defendants filed their Answer to the plaintiffs' complaint in the Superior Court of New Jersey, Camden County. See, true copy of the Kosseff defendants' Answer appended to plaintiffs' counsel's Affidavit as Exhibit "3". The Kosseff defendants did **not** file a Notice of Removal in this matter. Although the Kosseff defendants asserted that the Superior Court, Camden County did not have jurisdiction over the matter, they asserted a Cross-claim against the Ness Motley defendants for indemnification and contribution, in which they asserted that Ness Motley retained the Kosseff defendants as their

1

local counsel and that the Ness Motley defendants are responsible for mishandling the plaintiffs' prior suit. See, Exhibit "3" at ¶¶ 30, 31, 32, 33.

Moreover, while the Kosseff defendants dispute liability in their Answer, Mr. Kosseff admitted at the deposition of Brendan Meehan on April 23, 2004, that the Kosseff defendants were **not** contesting liability. See, pertinent pages of the deposition transcript of Brendan Meehan dated April 23, 2004 appended to the plaintiffs' counsel's Affidavit as Exhibit "4" at p. 107.

The plaintiffs' legal malpractice claims are supported by the initial expert report of Michael Ambrosio dated May 17, 2003, a true copy of which is appended to the plaintiffs' counsel's Affidavit as Exhibit "5".

By Order dated April 30, 2004, this Court extended the plaintiffs' time to serve an expert report with regard to the causation issues in the underlying asbestos suit until June 11, 2004. See, copy of Order dated April 30, 2004 appended to plaintiffs' counsel's Affidavit as Exhibit "6". The plaintiffs have complied with that deadline, having timely served the expert report of Dr. Klein. See, true copy of Dr. Klein's report appended to plaintiffs' counsel's Affidavit as Exhibit "7".

By Order dated June 18, 2004, the Court extended discovery to August 30, 2004, in part to permit the plaintiffs to complete the depositions of the defendants, which have been noticed and are currently being scheduled. See, true copy of this Court's Order dated June 18, 2004 appended to the plaintiffs' counsel's Affidavit as Exhibit "8".

On June 23, 2004, Mr. Kosseff filed a motion for summary judgment on behalf of himself *pro se*, but failed to file a Statement of Material Facts as required by Fed. R. Civ. Pro. 56. On June 30, 2004, Mr. Kosseff filed a motion for summary judgment on behalf of the defendant

Robert A. Kosseff & Associates, P.C., which likewise did not include a Statement of Material Facts. Finally, under cover letter dated July 7, 2004, the Kosseff defendants filed a Statement of Material Facts, yet the cover letter makes reference to the former Camden County Docket No. L-2128-03, and purports to enclose a Statement of Material facts submitted pursuant to R. 4:46-2(a), New Jersey's State Court rule regarding summary judgment. The motions for summary judgment seek to dismiss the plaintiffs' claims on the sole ground of allegedly failing to comply with Pennsylvania's statute of limitations for a legal malpractice claim. For the reasons set forth herein, plaintiffs vehemently oppose both of the motions, which are utterly without merit.

## PLAINTIFFS' RESPONSE TO THE KOSSEFF DEFENDANTS' STATEMENT OF MATERIAL FACTS[1]

1. Objection, improper statement of fact as it calls for a legal conclusion and is not supported by a citation to the record. As a result, this is denied.

2. Objection, improper statement of fact as it contains more than one factual allegation. Notwithstanding such objection, it is admitted that the plaintiffs met with Mr. Kosseff and Mr. Meehan on February 17, 1998, at which time they were advised by Mr. Kosseff that he and his firm had failed to file suit on Mr. Spitz' behalf in accordance with the statute of limitations. It is further admitted that the Kosseff firm had solicited, in violation of R.P.C. 7.3(b)(4), decedent Spitz, by writing to Spitz at his home in Ocean City, New Jersey, to induce decedent to retain the firm to represent Spitz in an asbestos litigation matter. See, Kosseff letter dated January 18, 1994, appended to plaintiffs' Complaint as Exhibit "A". It is admitted that the agreement was sent to Spitz in New Jersey and signed there, such that it was entered into in New Jersey. Id. It is also admitted that from January 1994 to the present date the Kosseff firm has maintained

---

[1] Since only one Statement of Material Facts has been filed on July 7, 2004, plaintiffs assume that this Statement of facts applies to both of the Kosseff defendants' motions. Thus, plaintiffs' response to this Statement applies to both.

3

offices for the transaction of legal business in the state of New Jersey. It is denied that the plaintiffs were advised at the February 17, 1998 meeting about Pennsylvania's two (2) year statute of limitations regarding a legal malpractice claim against the Kosseff defendants. See, Kosseff letter dated January 18, 1994 as Exhibit "A", Kosseff letter dated August 9, 1996 as Exhibit "B", and Kosseff letter dated March 27, 1998 as Exhibit "D" appended to plaintiffs' complaint; true copy of the Kosseff defendants' Answer and Cross-claim against the Ness Motley defendants appended to plaintiffs' counsel's Affidavit as Exhibit "3"; and true copy of the plaintiffs' Answers to Ness Motley's Interrogatories appended to plaintiffs' counsel's Affidavit as Exhibit "9" appended to the plaintiffs' counsel's Affidavit at No. 17.

3.  It is admitted that Ms. Van Laarhoven, the decedent's daughter and a plaintiff herein, contacted Mr. Meehan on several occasions requesting information regarding her father's claim which the Kosseff firm agreed to handle. It is further admitted that after the statute of limitations period for the underlying claim had expired, the Kosseff defendants and Meehan misrepresented to and concealed from Ms. Van Laarhoven the true state of affairs until February 1998. It is denied that Mr. Meehan reinforced to Ms. Van Laarhoven the Pennsylvania statute of limitations with regard to a legal malpractice suit against the Kosseff defendants. See, Exhibit "9" appended to plaintiffs' counsel's Affidavit at No. 17.

4.  Objection, improper statement of fact as it contains more than one factual allegation. Notwithstanding such objection, admitted.

5.  Objection, improper statement of fact as it calls for a legal conclusion. Notwithstanding such objection, it is admitted that the plaintiffs filed their legal malpractice claim against the Kosseff defendants on April 10, 2003, within six (6) years of learning of the

4

Kosseff defendants' malpractice in February 1998. See, Exhibit "1" appended to plaintiffs' counsel's Affidavit; Exhibit "9" appended to plaintiffs' counsel's Affidavit at No. 17.

## PLAINTIFFS' COUNTER-STATEMENT OF UNDISPUTED MATERIAL FACTS

The plaintiffs respectfully submit that all of the material facts in this case are undisputed, as admitted by Mr. Meehan. See, Exhibit "4" at pp. 117-118. Plaintiffs further submit that the Kosseff defendants have judicially admitted at defendant Meehan's deposition that they are not contesting liability in this matter. See, Exhibit "4" at p. 106. Plaintiffs assert that the undisputed facts are as follows:

1. The actions and communications of the Kosseff defendants caused the decedent, and the plaintiffs, to form the reasonable belief that the Kosseff firm was acting as "local counsel" for Ness Motley in connection with the decedent's asbestos claim. See, true copy of the plaintiffs' Answers to Ness Motley's Interrogatories appended to the plaintiffs' counsel's Affidavit as Exhibit "9" at no. 17; Exhibit "1", true copy of the Kosseff firm's January 18, 1994 correspondence to Mr. Spitz annexed to the plaintiffs' complaint as Exhibit "A".

2. The Kosseff firm's January 18, 1994 correspondence to Mr. Spitz stated that the defendant Ness, Motley, Loadholt, Richardson & Poole was a law firm acting as the general law firm of the Sheet Metal Workers' National Union and that the Kosseff firm was acting as local counsel for Ness Motley. See, Exhibit "A" annexed to the plaintiff's complaint.

3. The January 18, 1994 letter enclosed Ness Motley's fee agreement, which was signed and entered into by the decedent Mr. Spitz in New Jersey. See, Exhibit "A" annexed to the plaintiff's complaint.

4. Mr. Kosseff had advised Meehan that Kosseff "had made contact with the Ness Motley firm to work on asbestos cases for the local sheet metal workers 19." See, Exhibit "4" at

5

p. 21; true copies of pertinent pages of Kosseff's April 26, 2004 deposition transcript appended to plaintiffs' counsel's Affidavit as Exhibit "10" at pp. 6-7, 13-14.

5.  Mr. Meehan was the paralegal who was employed by Mr. Kosseff to handle all of the firm's claims on behalf of railroad workers and the asbestos litigation claims, such as the claim of the decedent, Mr. Spitz.  See, Exhibit "4" at pp. 19-25.

6.  Mr. Kosseff was the attorney who was responsible for supervising Mr. Meehan in connection with the handling of the Spitz claim from 1994 through 1998.  See, Exhibit "4" at p. 67.  However, Mr. Meehan could not remember a single specific act which Mr. Kosseff performed to supervise Meehan in his handling of the Spitz claim.  See, Exhibit "4" at pp. 76-77.

7.  In connection with the representation of decedent, the defendant Brendan G. Meehan, on behalf of Kosseff & Chaiken, a general partnership, had the decedent John Spitz execute an agreement of retention of the defendant Ness, Motley, as general counsel, and the defendant Kosseff & Chaiken, as local counsel, such that all three law firms, Kosseff & Chaiken, Robert A. Kosseff & Associates, P.C., and Ness, Motley, Loadholt, Richardson & Poole had a duty to protect the rights and interests of the decedent.  See, Exhibit "9" at No. 17; Exhibit "A" annexed to the plaintiff's complaint.

8.  Mr. Meehan had been given a copy of Ness Motley's contingent fee agreement, which was sent to Mr. Spitz in New Jersey and executed there by Mr. Spitz, by an unnamed individual employed by the Kosseff firm.  See, Exhibit "4" at pp. 27, 29.

9.  As a result of correspondence from the defendant Meehan directed to the decedent in the state of New Jersey dated January 18, 1994, the decedent executed a contract of representation, by which the decedent hired Kosseff & Chaiken and Ness, Motley, Loadholt, Richardson & Poole to recover for his asbestos-related injuries.  See, Exhibit "9" at No. 17; true

6

copy of Ness Motley retainer agreement executed by the decedent appended to the plaintiffs' counsel's Affidavit as Exhibit "11".

10. After the decedent's initial retention of the attorneys and before the statute of limitations on the asbestos survival claim expired, the partners in the defendant Kosseff & Chaiken ceased doing business as partners, at which time the defendant Robert A. Kosseff, an individual licensed to practice law in the State of New Jersey, created his own law firm, the defendant Robert A. Kosseff & Associates, P.C., which assumed responsibility for the proper preservation and prosecution of the decedent's claims; during the course of that representation, the defendant Robert A. Kosseff & Associates, P.C. did business in Camden County, New Jersey, at offices located at 63 Warwick Road, Stratford, New Jersey. See, Exhibit "9" at No. 17.

11. On or about June 22, 1994, the decedent J. George Spitz died of respiratory failure, which death, according to Dr. Klein, was causally related to the exposure to asbestos. See, Exhibit "7"; Exhibit "9" at No. 17.

12. As a result of decedent's exposure to asbestos during the course of his life, the decedent's Estate had a survival action to recover for his conscious pain, suffering, and disability incident to the asbestos exposure; similarly, as a result of his asbestos-related death on June 22, 1994, a wrongful death action existed on behalf of the plaintiffs as a result of their relationship with the decedent, Marianna H. Spitz being the wife of the decedent, who was entitled to his comfort, care, companionship, society, and consortium during his lifetime, and further being entitled to pecuniary support and a recovery as a result of his death, and plaintiff Marianna H. Van Laarhoven being the daughter of the decedent with the same entitlement. See, Exhibit "9" at No. 17.

13. Following the retention of the attorneys by the decedent, which retention was ratified after his death by the decedent's representatives, plaintiffs had regular and routine contact with the defendants, and were falsely advised as late as August 9, 1996, over two years after his death, by the defendant Meehan that the decedent's asbestos case was "ongoing". See, Exhibit "9" at No. 17; true copy of defendant Meehan's correspondence dated August 9, 1996 annexed to the plaintiffs' complaint as Exhibit "B".

14. Other than the letter from Mr. Meehan in August, 1996, plaintiffs heard little from any of the defendants for the balance of that year, such that the plaintiffs began to call in early 1997, which ultimately resulted in an appointment for June 11, 1997, canceled at the last minute by the defendants. See, Exhibit "9" at No. 17.

15. Plaintiff Van Laarhoven finally spoke with the defendant Meehan on or about September 11, 1997, at which time he claimed he could not find the decedent's case file and would call her back; there then followed literally months and months of unsuccessful efforts on the part of the plaintiffs to contact the Kosseff defendants, to no avail. See, Exhibit "9" at No. 17.

16. In or about February, 1998, plaintiff began to call the defendant Meehan nearly every single day, and called the defendant Kosseff on or about February 9, 1998, in order to make an appointment to see him. See, Exhibit "9" at No. 17.

17. On or about February 10, 1998, plaintiff Van Laarhoven, employed as a secretary for Camden County Superior Court Judge Charles Rand, received a telephone call from the defendant Kosseff's office asking, of all things, for plaintiff to identify the attorney who was handling the decedent's case at the defendant Kosseff's law firm. See, Exhibit "9" at No. 17.

18. Plaintiff Van Laarhoven informed the law firm that she had never been advised of such information, after which plaintiff received a call from Janet Gilbert, who identified herself to be the office manager, and who later called back plaintiff Van Laarhoven to advise that an appointment with the defendant Kosseff could occur, as it ultimately did, on February 17, 1998. See, Exhibit "9" at No. 17.

19. On or about February 17, 1998, plaintiffs learned for the first time, as a result of admissions by Kosseff, an unidentified associate who is one of the John Doe defendants, and the defendant Meehan, that the attorneys had "mishandled" the matter, that the decedent's case had "fallen through the cracks", that no suit had ever been filed on behalf of the decedent or the estate, and that the defendants were attempting to rectify their misconduct by seeking another jurisdiction with a longer statute of limitations. See, Exhibit "4" at pp. 98-104; Exhibit "9" at No. 17.

20. By letter dated February 23, 1998, plaintiffs confirmed the representations made by those present at the meeting on February 17, 1998, which letter, to this date, has never been refuted or disputed to any extent by any of the defendants. See, true copy of the plaintiff's correspondence to Mr. Kosseff dated February 23, 1998 annexed to the plaintiffs' complaint as Exhibit "C".

21. As set forth in the letter of February 23, 1998, paragraph 2, the defendant Kosseff admitted on February 17, 1998, that the statute of limitations to file suit had run, although defendants were looking for other states, such as Minnesota, within which to file suit on a timely basis; thereafter, by letter of March 27, 1998, the defendant Meehan, on behalf of the defendant Kosseff and the other defendants, advised that the statute of limitations in Maine had not yet expired, but further confirmed that the defendant law firm had been unable to find anyone to take

9

the decedent's case.  See, Exhibit "4" at pp. 72-73, 76-78, 94-95; Exhibit "9" at No. 17; true

copy of Mr. Meehan's correspondence dated March 27, 1998 annexed to the plaintiffs'

complaint as Exhibit "D".

22. Nothing has been done by defendants since the correspondence of March 27, 1998, to

file a survival action, a wrongful death action on behalf of the decedent, or an action to recover

for loss of consortium and loss of pecuniary support on behalf of the plaintiffs, the decedent's

widow and child.  See, Exhibit "4" at pp. 111-112; Exhibit "9" at No. 17.

23. The plaintiffs contend that as a direct and proximate result of the foregoing,

defendants have not only violated their contract, the standard of care, and their fiduciary duty,

but attempted to cover up that breach of duty by engaging in fraudulent concealment of their

breaches, all resulting in the loss of the value of the underlying case.  See, Exhibit "5"; Exhibit

"7"; Exhibit "9" at No. 17.

## LEGAL ARGUMENT

**I.    THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT SHOULD BE
DENIED AS THEY WHOLLY FAIL TO COMPLY WITH THE RULES OF THIS
COURT.**

The Kosseff defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56.

The standards under which such a motion must be decided are set forth in Celotex Corp. v. Catrett,

477 U.S. 317, 325 (1986); Reitz v. County of Bucks, 125 F.3d 139, 143 (3rd Cir 1997); Pastore v.

Bell Telephone Co. of Pennsylvania, 24 F.3d 508, 512 (3d Cir. 1994); Pennsylvania Coal Ass'n v.

Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indrs. v. Schaeffer, 811 F.2d 225, 231 (3d Cir.

1987); Big Apple BMW, Inc. v. BMW of N.Am., Inc., 974 F.2d 1358, 1363 (3d. Cir. 1992), cert.

denied, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed. 2nd 659 (1993) and Murphy v. Housing Authority,

Atlantic City, 32 F.Supp.2d 753, 763 (D.N.J. 1999), and need not be repeated here.  The plaintiffs

10

oppose the Kosseff defendants' motion, and assert that both substantative and procedural defects exist which preclude granting the motion.

Local Civil Rule 56.1 requires that a party seeking summary judgment submit a Statement of Uncontested Material Facts with the motion, which statement must be supported by the record. Here, the Kosseff defendants have filed three separate documents purporting to be part of two motions for summary judgment. The first was filed on June 23, 2004 on behalf of Mr. Kosseff *pro se*, which **did not** contain any Statement of Material Facts as required by the rule. The next was a motion filed on June 30, 2004 on behalf of the Robert A. Kosseff & Associates, P.C., which again **did not** contain any Statement of Material Facts as required by the rule. Finally, under cover letter dated July 7, 2004 (which still reflects a North Wildwood, NJ office address) the Kosseff defendants filed the **only** purported Statement of Material Facts in connection with the pending motions. That Statement of Material Facts represents that it is being filed in accordance with New Jersey State Court Rule 4:46-2(A), not Fed.R.Civ. P. 56. Thus, it is clear that the Kosseff defendants have failed to comply with the federal rules, such that it is respectfully requested that this Court deny the Kosseff defendants' motions in their entirety. See, Bowers v. NCAA, 9 F.Supp. 2d 460, 476 (D.N.J. 1998); SEC v. Chester Holdings, Ltd., 41 F.Supp. 2d 505, 516 (D.N.J. 1999); and N.J. Auto Ins. Plan v. Sciarra, 103 F.Supp. 2d 388, 395 (D.N.J. 1998).

## II. THE NEW JERSEY STATUTE OF LIMITATIONS, A PROCEDURAL RULE OF LAW, APPLIES TO THIS CASE, AND THE PLAINTIFFS FILED WITHIN THE SIX-YEAR STATUTE.

It is respectfully submitted that the Kosseff defendants' statute of limitations argument is completely without merit, and should be rejected by this Court. It is undisputed that this Court's exercise of jurisdiction in this matter is based upon Ness Motley's claim of diversity under 28 U.S.C.A. §1332. In accordance with the United States Supreme Court's decision in Erie R.R.

Co. v. Tompkins, 304 U.S. 64, 78 (1938), this Court, which is sitting in diversity, must apply the substantive state law of the state in which it sits, that being New Jersey. See also, National-Standard Company v. Clifton Avenue Corp., 775 F. Supp. 151, 157 (D.N.J. 1991). Likewise, in order to resolve the conflict between New Jersey and Pennsylvania law, this Court must apply New Jersey's conflict of laws rules. See, Schum v. Bailey, 578 F.2d 493, 502 (3rd Cir. 1978); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941); Guaranty Trust Co. v. York, 326 U.S. 99 (1945).

The controlling precedent in New Jersey when deciding the issue of which of multiple states' statutes of limitations is the case of Marshall v. Geo. M. Brewster & Son, Inc., 37 N.J. 176, 178 (1962). In accordance with Marshall, New Jersey courts do not use a general choice of law "governmental interest" analysis to choose which of two or more competing statutes of limitations should apply, but instead generally apply New Jersey's procedural law, such that the law of the forum controls. See, Marshall, 37 N.J. at 178; O'Keeffe v. Snyder, 83 N.J. 478, 490 (1980); Heavner v. Uniroyal Inc, 63 N.J. 130, 135 (1973); North Bergen Rex Trans. v. TLC, 158 N.J. 561, 569 (1999); Du-Wel Prods., Inc. v. United States Fire Ins. Co., 236 N.J. Super 349, 362 (App. Div. 1989), certif. den., 121 N.J. 617 (1990).

N.J.S.A. 2A:14-1 applies to both contract claims and claims against attorneys for legal malpractice. Grunwald v. Bronkesh, 131 N.J. 483, 494 (1993). New Jersey procedural law provides for a six (6) year statute of limitations for legal malpractice and contract claims. Id; N.J.S.A. 2A:14-1. Pennsylvania law allows a two (2) year statute of limitations for a legal malpractice claim, and a four (4) year statute of limitations for a contract claim. New Jersey's statute of limitations is a procedural rule of law. Marshall, 37 N.J. at 178; Heavner v. Uniroyal Inc, 63 N.J. 130, 135 (1973).

12

Since Mr. Kosseff solicited a New Jersey citizen, Mr. Spitz, as a client, and chose to have his firm located in the State of New Jersey in order to do business, it is crystal clear that New Jersey has *in personam* jurisdiction on the plaintiffs' claims against the Kosseff defendants. In O'Keeffe v. Snyder, 83 N.J. 478, 490 (1980), the New Jersey Supreme Court stated:

> The traditional rule to determine which of two statutes of limitations is applicable is that the ***statute of the forum governs*** unless the limitation is a condition of the cause of action. (emphasis added).

O'Keeffe, 83 N.J. at 490 (citing Marshall, 37 N.J. at 176).

The New Jersey courts have created only one, very limited exception to the rule that a New Jersey court will apply the New Jersey statute of limitations law to a case filed in the New Jersey courts. *See* Heavner, *supra*; O'Keeffe, 83 N.J. at 490. Where that exception applies, a New Jersey court may borrow the statute of limitations of another state ***only*** if certain extremely specific requirements are met. Heavner, 63 N.J. at 140-41.

In Heavner, plaintiff filed a products liability action in New Jersey arising out of an accident that occurred in North Carolina from an alleged defective tire. **All of the parties, both plaintiff and defendant, were from North Carolina. The accident happened there. All preceding incidents occurred there. The one, and only one, connection with New Jersey was that defendant was incorporated here.** By the time the suit was filed in New Jersey, the North Carolina statute of limitations had already expired. Heavner, 63 N.J. at 134. The Heavner Court distinguished the traditional rule that New Jersey applies its own procedural statute of limitations to personal injury actions, thereby creating a limited exception to the traditional rule, by stating:

> We need go no further now than to say that when the cause of action arises in another state, the parties are all present in and amenable to the jurisdiction of that state, New Jersey has no substantial interest in the matter, the substantive law of the foreign state is to be applied, and its limitations period has expired at the time

13

> the suit is commenced here, New Jersey will hold the suit barred. In essence, we will borrow the limitations law of the foreign state. ***We presently restrict our conclusion to the factual pattern identical with or akin to that in the case before us***, for there may well be situations involving the significant interests of this state where it would be inequitable or unjust to apply the concept we here espouse. (emphasis added).

Heavner, 63 N.J. at 490-91. Seven years later, the New Jersey Supreme Court in O'Keeffe held that the Heavner exception contained five specific requirements, in the conjunctive, not disjunctive:

> (1) the cause of action arose in the other state; (2) the parties are present in and amenable to jurisdiction in the other state; (3) New Jersey has no interest in the matter; (4) the substantive law of the other jurisdiction is applicable; and (5) the limitations' period of the other jurisdiction has expired at the time of commencement of the suit in New Jersey. (emphasis added).

O'Keeffe, 83 N.J. at 490. Just as it did in Heavner, the O'Keeffe Court held that the Heavner exception is a **very** limited one. O'Keefe, 83 N.J. at 490.

There are no other recognized exceptions to the general rule that New Jersey applies its own statute of limitations law to cases filed in New Jersey, and clearly New Jersey has an interest in protecting its citizens from the misconduct of lawyers whose professional corporations have offices in the State. Thus, the under a similar factual scenario as was present in Marshall, this Court should reject the defendants' contention that the Pennsylvania statute of limitations applies.

In Marshall, an Ohio resident filed an action against various New Jersey corporations, who performed construction work on a railroad crossing in Pennsylvania, at which the plaintiff's decedent was killed in an automobile accident. Marshall, 37 N.J. at 178. The defendants in Marshall were incorporated in New Jersey and had their principal places of business here. Id. at 188. The Marshall Court applied the New Jersey statute of limitations, rather than Pennsylvania's

14

more restrictive limitations law, because the defendant had a significant presence in New Jersey by doing business in New Jersey. Marshall, 37 N.J. at 176; Gantes v. Kason Corp., 145 N.J. 478 (1996)(reconciling the Court's prior Heavner and Marshall holdings, and adhering to both holdings).

Here, it is undisputed that the Kosseff defendants maintained offices for the practice of law in New Jersey at the time the decedent, Mr. Spitz was first solicited in New Jersey to retain them as counsel, as evidenced by the Kosseff defendants' letter dated January 18, 1994 (Exhibit "A" annexed to the plaintiffs' complaint). At that time, the offices were located at 903 N. Broad Street, Woodbury, New Jersey. They remained at those offices in August 1996, as evidenced by their correspondence dated August 9, 1996, a copy of which is annexed to plaintiffs' complaint as Exhibit "B". By March, 1998, the Kosseff defendants had relocated their New Jersey office to 63 Warwick Road, Stratford, NJ, as evidenced by their correspondence dated March 27, 1998, a copy of which is annexed to plaintiffs' complaint as Exhibit "D". At the time they filed their Answer in this case, the Kosseff defendants identified 100 Angelsea Drive, Suite 15A, North Wildwood, NJ as their New Jersey Office. See, copy of the Kosseff defendants' Answer to the complaint appended to plaintiffs' counsel's Affidavit as Exhibit "3". The June 30, 2004 cover letter under which the Kosseff defendants filed the pending motion likewise reflects that same address for their New Jersey office. Thus, at all times relevant to this litigation, the Kosseff defendants have maintained offices for the transaction of business in New Jersey.

The Kosseff defendants' argument ignores the fact that prior to his death, Mr. Spitz resided in Ocean City, New Jersey, where the Kosseff defendants first solicited his case, and plaintiffs continue to live in New Jersey, and the Kosseff defendants do business in New Jersey. See, Exhibit "A" annexed to the plaintiffs' complaint. In light of all of these facts, Marshall

therefore clearly controls, such that the Kosseff defendants' motion for summary judgment should be denied.

Even if Marshall were not directly in point and controlling, as it is, the Kosseff defendants have not established the five required conjunctive elements of the Heavner exception. At least three of the requisite elements are lacking. Defendants have not established as a matter of law that ". . . (2) the parties are present in and amenable to jurisdiction in the other state; (3) **New Jersey has *no interest* in the matter**; and (4) the substantive law of the other jurisdiction is applicable." O'Keeffe, 83 N.J. at 490 (citing Heavner, *supra*.).

The Kosseff defendants also have failed to establish that the substantive law of Pennsylvania applies to this case. Both states recognize professional negligence and contract actions against the attorneys. See Knapp v. Murphy, 30 Pa. D. & C. 4th (Tioga Co. C.C.P. 1996) and Levinson v. D'Alfonso, 320 N.J. Super 312, 317 (App. Div. 1999). Under Veasey v. Doremus, 103 N.J. 244, 248 (1986), because there is no actual conflict, this court must apply New Jersey law. Grossman v. Club Med, Inc., 273 N.J. Super 42 (App. Div. 1994). The fourth Heavner requirement has therefore not been established.

Under Marshall, it is respectfully submitted that this Court should deny the Kosseff defendants' motion, hold that New Jersey's statute of limitations law applies to this case, and rule that plaintiffs complied with the applicable statute.

**III. AS A MATTER OF LAW, PLAINTIFFS HAVE COMPLIED WITH THE NEW JERSEY STATUTE OF LIMITATIONS; THUS THE COURT SHOULD STRIKE THE DEFENSE OF FAILURE TO COMPLY WITH THE STATUTE OF LIMITATIONS.**

Plaintiffs complied with the New Jersey statute of limitations in this case. Under Grunwald, the discovery rule applies to legal malpractice cases. Additionally, a legal malpractice claim does not accrue until actual harm or damages has occurred. Grunwald, 131

N.J. at 494; <u>Mystic Isle Dev. Corp. v. Perskie & Nehmad</u>, 142 N.J. 310, 326 (1994); <u>Olds v. Donnelly</u>, 150 N.J. 424, 437 (1997); see also <u>Grunwald</u>, *supra*, 131 N.J. at 494 (noting that the limitation period begins when the client suffers actual damage); <u>McGrogan v. Till</u>, 327 N.J. Super. 595, 602 (App. Div. 2000), *aff'd as modified*, N.J. (2001) (inferring in a legal malpractice action that "damage" occurred when a criminal defendant was indicted and incurred legal fees); <u>Commonwealth Title v. Kurnos</u>, 340 N.J. Super 25 (App. Div. 2001).

Therefore, the claim for legal malpractice could not possibly have accrued before the February 1998 meeting in which the Kosseff defendants first advised the plaintiffs that they had failed to file suit on Mr. Spitz' behalf within the statute of limitations, and it is undeniable that this case, filed April 10, 2003, was timely filed within the six (6) years permitted by New Jersey's statute of limitations.

It is respectfully requested that this Court (1) deny the Kosseff defendants' motion to declare that the Pennsylvania statute of limitations applies, (2) find that the New Jersey six (6) year statute of limitations applies to this case, (3) find that the plaintiffs' claims were timely filed, and (4) enter an Order striking the defense of failure to comply with the statute of limitations.

## IV.    THE KOSSEFF DEFENDANTS ARE ESTOPPED FROM ASSERTING THE STATUTE OF LIMTATIONS AS A DEFENSE IN THIS MATTER UNDER NEW JERSEY LAW.

Plaintiffs respectfully submit that the Kosseff defendants' motion should be denied, based upon the passage of time and under the equities of this case, consistent with the November 24, 2003, New Jersey Supreme Court decision in <u>Knorr v. Smeal</u>, 178 N.J. 169 (2003).

In <u>Knorr</u>, Ms. Knorr filed a medical malpractice action on July 1, 1999, against two physicians, Dr. Smeal and Lockwood, and the South Jersey Hospital System. Each of the three

defendants filed an Answer, by which each demanded service of an Affidavit of Merit pursuant to N.J.S.A. 2A:53A-26. Knorr, 178 N.J. at 174-175. Dr. Lockwood successfully moved to dismiss the Complaint by motion filed on December 15, 1999, just over 120 days after filing his Answer, based upon the failure to be served with an Affidavit of Merit; less than two weeks later, South Jersey Hospital System filed a similar motion, which was denied because of the hospital's failure to supply medical records previously requested by the plaintiffs. Knorr, 178 N.J. at 175.

The third defendant, Dr. Smeal, received notice of both motions, but failed to file a motion to dismiss, even though it was undisputed he never received an Affidavit of Merit. Rather, defendant Smeal proceeded with discovery, in connection with which plaintiffs filed and served an expert report detailing deviations from the standard of care, both plaintiffs and defendants were deposed, and defendants successfully moved for, and obtained, a physical examination of the plaintiff by a defense expert. After the completion of discovery, which, under a case management order, was to end October 16, 2000, defendant Smeal finally moved to dismiss the Complaint based upon the failure to submit an Affidavit of Merit. This motion was filed on March 2, 2001, more than 14 months after the deadline for filing the Affidavit. Knorr, 178 N.J. at 175-176. The trial court granted the motion and dismissed the Complaint, which the Appellate Division affirmed. Thereafter, the Supreme Court granted Certification on the limited issue of whether the doctrines of waiver, estoppel, or laches barred that dismissal. Knorr v. Smeal, 175 N.J. 431 (2003).

In discussing the background of the Affidavit of Merit statute, the Supreme Court noted that the essential goal of the statute requiring such an affidavit "is to put to rest unmeritorious

and frivolous malpractice lawsuits at an early stage of litigation while allowing worthy claims to proceed through discovery and, if warranted, to trial." The Supreme Court further noted that:

> **[T]he salutary benefit to both sides in eliminating a non-genuine malpractice claim early on is the conservation of resources. Plaintiffs and defendants should not be dragged through an expensive and burdensome discovery process that includes the taking of emotionally draining depositions if the plaintiffs cannot produce an expert to support their claims. As we discussed in Ferreira, we place a premium on prompt action by both plaintiffs and defendants. In this way, the resources and time of the parties will not be wasted by the continuation of unnecessary litigation.**

Knorr, 178 N.J. at 176. (emphasis added) The Court defined the question confronting it as "whether granting defendant's motion **so late in the litigation process -- after** defendant is in full possession of discovery and has verified the merit of plaintiffs' claims -- would work an injustice and pervert the true purpose of the Affidavit of Merit statute." (emphasis added) Knorr, 178 N.J. at 176.

Although the Supreme Court in Knorr found that waiver did not apply to the circumstances in that particular case, based upon the fact that neither the statute nor New Jersey case law intimated that a defendant would face an equitable bar of waiver on account of a dilatory filing of a motion to dismiss, the Court went on to discuss the equitable doctrine of estoppel, based upon the defendant's long delay in filing the motion and his active use of the discovery process upon which plaintiffs relied to their detriment, stating:

> Estoppel is an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law. (Citation omitted). The doctrine is designed to prevent injustice by not permitting a party to repudiate a course of action on which the other party has relied to his detriment. (Citation omitted). The doctrine is evoked 'in the interests of justice, morality, and common fairness.' (Citations omitted). 'Estoppel, unlike waiver, requires the reliance of one party on another.' (Citation omitted). In short, to establish equitable estoppel, plaintiffs must show that defendant engaged in conduct, either intentionally or under circumstances that induced reliance, and that plaintiffs acted or changed their position to their detriment. (Citation omitted).

19

Knorr, 178 N.J. at 178.

Finding that the failure of the defendant Smeal to file a dismissal motion based on the absence of a filed and served Affidavit of Merit surely induced plaintiffs to believe the case was on course, and finding that it was certain that plaintiffs would not have engaged in extensive discovery if they knew their cause of action was doomed due to their earlier failure to serve a timely Affidavit, the New Jersey Supreme Court noted that plaintiffs incurred significant expert and deposition costs, as well as emotional distress, under the mistaken belief that their cause of action was still viable. Knorr, 178 N.J. at 180.

The New Jersey Supreme Court further noted that if the order to dismiss were to be upheld, the attorneys would have labored needlessly and the judicial system have expended its resources on a case that should not have even been on the calendar had the defendant Smeal acted in a timely manner. The Court then held that the defendant Smeal was equitably estopped from gaining a dismissal because of his belated filing of the motion and plaintiffs' reliance on the failure to do so on a timely basis. Knorr, 178 N.J. at 180.

The rationale for reversal and reinstatement of the Knorr Complaint was not, however, limited to the doctrine of equitable estoppel; rather, the Court supplemented its reasoning by holding that the Smeal motion to dismiss was further barred by the doctrine of laches:

> That doctrine [of laches] is invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party. (Citation omitted). Laches may only be enforced when the delaying party had sufficient opportunity to assert the right in the proper forum and the prejudiced party acted in good faith believing that the right had been abandoned. (Citation omitted). The time constraints for the application of laches 'are not fixed but are characteristically flexible.' (Citation omitted). The key factors to be considered in deciding whether to apply the doctrine are the length of the delay, the reasons for the delay, and the 'changing conditions of either or both parties during the delay.' (Citation omitted). The core equitable concern in applying laches is whether a party has been harmed by the delay. (Citation omitted).

20

Knorr, 178 N.J. at 180-181.

Finding that the defendant Smeal had slept on his rights and that plaintiffs were harmed by the delay, with the defendant having offered no plausible justification for the unreasonable delay in filing the motion, the New Jersey Supreme Court held that plaintiffs were caused by the defendant, due to his inexcusable delay, to believe to their detriment that defendant had abandoned defenses later raised by the dismissal motion, and were further harmed by the significant costs and emotional burden born during fourteen (14) months of discovery. By application of the doctrine of laches, defendant was held to have forfeited his right to pursue the motion. Knorr, 178 N.J. at 181.

Plaintiffs respectfully submit that this case is even stronger for the plaintiffs than Knorr. As noted above, plaintiffs' complaint was filed on April 10, 2003. Much like the defendant Smeal in Knorr, rather than move promptly to dismiss the case based on the alleged application of the Pennsylvania statute of limitations, the Kosseff defendants filed an Answer to the complaint in the New Jersey Superior Court, Camden County, and did not file a Notice of Removal. Thereafter, just as in Knorr, the parties engaged in substantial discovery over 11 months, exchanging interrogatories, requests for production of documents, depositions, and the service of two expert reports on plaintiffs' behalf, those of Mr. Ambrosio and Dr. Klein. See, Exhibits "5" and "7". More importantly, Mr. Kosseff has freely admitted that the moving defendants are not contesting liability. See, Exhibit "4" at p. 106. It is undisputed that this statement constitutes a judicial admission, which has been defined as:

> An express waiver made in court or prepatory to trial by the party or his attorney **conceding for the purposes of the trial** that **the truth of some alleged fact**, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that one party need offer no evidence to prove it and the other is not allowed to disprove it. (emphasis added).

21

Saltsman v. Corazo, 317 N.J. Super. 237, 245, 721 A.2d 1000 (App. Div. 1998) (citing Chaffee v. Kraft Gen. Foods, Inc., 886 F. Supp. 1164, 1168 (D.N.J. 1995) (quoting 9 Wigmore on Evidence §2588 (Chadbourn rev. 1981)). See also, Muller Fuel Oil Company v. Insurance Company of North America, 95 N.J. Super. 564, 573-574, 232 A.2d 168 (App. Div. 1967) (admission by attorney through opening to the Court sufficient to support grant of involuntary dismissal based upon the opening of plaintiff's attorney); Stoelting v. Hauck, 32 N.J. 87, 59 A.2d 385 (1960).

Most importantly, the Kosseff defendants did not move to dismiss the complaint until late June 2004, some thirteen (13) months after it had been filed. Thus, the facts in this case are nearly identical to those before the New Jersey Supreme Court in Knorr, such that the Kosseff defendants' thirteen (13) month delay completely bars, on an equitable basis, the Kosseff defendants from asserting the affirmative defense that the Pennsylvania statute of limitations bars the plaintiffs' claims.

In addition, not only did the plaintiffs obtain an expert report on the issue of Kosseff defendants' liability from Mr. Ambrosio (Exhibit "5"), but they also paid for and obtained an expert report on the underlying issue of damages from Dr. Klein (Exhibit "7"), which report was likewise served upon the defendants. Thus, the plaintiffs incurred substantial expert fees and costs **prior to** the Kosseff defendants filing their motion, not to mention having expended significant hours in legal and paralegal time, all of which constitute damages which would not have been incurred but for Kosseff defendants' laggardliness, assuming that the Pennsylvania statute of limitations did apply, contrary to plaintiff's position in this matter. See, Safer v. Willougby, 143 N.J. 256 (1996).

Just as the New Jersey Supreme Court found had occurred in <u>Knorr</u>, the Kosseff defendants' failure here to promptly and timely file a motion seeking the dismissal of the complaint on the assertion that the Pennsylvania statute of limitations applied to bar the claim substantially prejudiced the plaintiffs, and led plaintiffs and their attorneys to reasonably believe that Kosseff defendants did not intend to pursue that defense, such that defendants should be equitably barred from raising that defense now. <u>Knorr</u>, 178 N.J. at 180. As the <u>Knorr</u> Court further noted, "[I]t makes no difference that defendant did not intend to mislead or cause plaintiff to continue with discovery." <u>Knorr</u>, 178 N.J. at 180. Plaintiffs therefore need not prove deliberate fraud on the Court on the part of the Kosseff defendants, nor do they need to prove scienter, nor a deliberate intent to mislead. <u>See</u>, <u>Nappe v. Anschelewitz, Barr, Ansell & Bonello</u>, 97 N.J. 37, 477 A.2d 1224 (1984).

Plaintiffs further submit that although waiver, the voluntary and intentional relinquishment of a known right, was found not to be applicable in <u>Knorr</u>, it is applicable in this case. In <u>Knorr</u>, it was crystal clear that every defendant asserted the defense of entitlement to have an Affidavit of Merit filed and served. <u>Knorr</u>, 178 N.J. at 175. The New Jersey courts have noted that a party's failure to assert such a defense amounts to the waiver of same. See, <u>Aikens v. Schmidt</u>, 329 N.J. Super. 335 (App. Div. 2000) (holding that similar issue preclusion defense, the entire controversy doctrine, waivable); <u>Morris v. Krauszer's Food Stores</u>, 300 N.J. Super. 529, 539-540 (App. Div. 1997) (holding that claim preclusion bar, worker's compensation as exclusive remedy, waived); and <u>Brown v. Brown</u>, 208 N.J. Super. 372 (App. Div. 1986).

Furthermore, the New Jersey law has long been clear that an otherwise dispositive defense **can** be waived by a delay in asserting same. See, <u>Hernandez v. Stella</u>, 359 N.J. Super. 415, 416-19 (App. Div. 2003); <u>Konopka v. Foster</u>, 356 N.J. Super. 223, 812 A.2d 363 (App. Div.

23

2002); and <u>Zaccardi v. Becker</u>, 88 N.J. 245, 440 A.2d 1329 (1982).  For example, in <u>White v. Karlsson</u>, 354 N.J. Super 284 (App. Div. 2002), the New Jersey Appellate Division barred a defendant from asserting a statute of limitations defense, **even where the plaintiff's complaint had undeniably been filed twenty-nine (29) days after the expiration of the statute of limitations, and even where the defendant had asserted a statute of limitations defense in her answer**, based upon the defendants' delay in filing a motion for summary judgment on that theory.  There, just as here, the defendant Karlsson, notwithstanding her knowledge of the facts and circumstances controlling the applicability of the defense, put the plaintiff to the task of engaging in discovery and arbitration before filing a motion for summary judgment on the statute of limitations issue.  <u>White</u>, 354 N.J.Super. at 287-288.  Only after discovery was completed, and a mere week before trial, did that defendant finally move for summary judgment.  <u>Id.</u> at 288.  The <u>White</u> Court held that (1) the defendant could not rely upon the defense, after having engaged in discovery, and (2) neither plaintiff nor "their attorney had any reason to believe defendant was relying upon the limitations defense."  <u>White</u>, 354 N.J.Super. at 291.  The result should be the same in this case, where the record is identical to that in <u>White</u> and <u>Knorr</u>.

## V.  THE KOSSEFF DEFENDANTS' MOTION SHOULD BE DENIED AS DISCOVERY IS INCOMPLETE.

In addition to the substantial defect described above, it is respectfully submitted that the Kosseff defendants' motion should be denied as discovery is incomplete.  Pursuant to this Court's most recent scheduling Order dated June 18, 2004, discovery has been extended to August 30, 2004, in part in order to permit the parties to complete the depositions of Mr. Kosseff and Mr. Meehan and to take the testimony of a representative of the Ness Motley defendants. See, Exhibit "8".  Those depositions have not yet been taken, although efforts have been made to schedule same.  Without

24

those depositions, the record is incomplete and while the Kosseff defendants have addressed the legal malpractice claims in the plaintiffs' complaint in their Brief, they do not address the breach of contract, fraud, and willful, wanton, malicious breach of fiduciary duty and deceit claims, all of which are based on New Jersey state law. Thus, even if the Court were inclined to grant the defendants' pending motion with regard to the legal malpractice issue, the failure to have a complete record bars any award of summary judgment on the plaintiffs' other state law claims. See, Salomon v. Eli Lilly and Co., 98 N.J. 58 (1984); Velantzas v. Colgate-Palmolive Co., 109 N.J. 189 (1988); Kachmar v. Sungard Data Systems, Inc., 109 F.3d 173, 182-183 (3rd Cir. 1997)(when sex discrimination plaintiff showed need for further discovery on issue of sex of replacement, plaintiff should have been given the opportunity to conduct discovery on that issue.). For this reason as well, it is respectfully requested that the Court deny the motions in their entirety.

## CONCLUSION

For the forgoing reasons, it is respectfully requested that the Court deny the Kosseff defendants' Motion for Summary Judgment in its entirety, and enter and Order holding that New Jersey's statute of limitations applies, and barring the Kosseff defendants from asserting the defense of failure to comply with the statute of limitations, together with such other further and different relief as this Court deems appropriate.

VAN SYOC CHARTERED

BY: _____
JAMES E. BURDEN (8604)

Dated: 7. 15. 04

25